IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ATLANTIC MUTUAL INSURANCE
COMPANY, a New York corporation,

            Plaintiff,

    v.

SCP GLOBAL TECHNOLOGIES, INC., an Idaho
corporation, and DOES 1-25, inclusive,

            Defendants

CV-05-879-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Atlantic Mutual Insurance Company ("Atlantic Mutual"), seeks a declaratory judgment that it is not contractually obligated to defend or indemnify defendant, SCP Global Technologies, Inc. ("SCP Global"), in a lawsuit that is currently pending in Israel. The Israeli lawsuit deals with the installation of a "wet bench" purchased by Intel Electronic, Ltd. ("Intel"), a manufacturer of computer processors, from SCP Global and installed at an Intel facility in Israel.

1 - OPINION AND ORDER

Atlantic Mutual alleges that the parties are diverse in citizenship and that the amount in controversy exceeds $75,000.00. Accordingly, Atlantic Mutual invokes diversity jurisdiction under 28 USC § 1332 and seeks declaratory relief. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

Atlantic Mutual has filed a Motion for Summary Judgment (docket #14) and SCP Global has filed a Motion for Stay (docket #15). For the reasons that follow, Atlantic Mutual's Motion for Summary Judgment is GRANTED and SCP Global's Motion to Stay is DENIED.

## UNDISPUTED FACTS

### I.    The Insured Project

SCP Global develops and manufactures surface preparation technology and equipment used in the manufacture of semiconductors. Its surface preparation equipment is used to etch, clean and strip films and surfaces of silicon wafers. During 1998-99, SCP Global's products included a multiple-component device No. AWB032, known as a "wet bench," within which silicon wafers undergo chemical treatment during the manufacturing process. SCP manufactured and sold a "specially adapted" wet bench to Intel for use at Intel's Kiryat Gat fabrication plant.

On June 24, 1998, Intel entered into a "Bimodal Construction Contract" with Meissner-Baran ("Meissner-Baran") for installation of designated equipment at the Kiryat Gat plant. Meissner-Baran functioned as a Design/Engineering Contractor, Project Management Contractor, and/or Procurement Contractor and engaged subcontractors for various aspects of the project. In this instance, Meissner-Baran entered into subcontract agreements with underlying defendants Yona Hadad and Bros. Properties and Investments, Ltd., and Bitzuei Matechet, Ltd.

("subcontractors") to perform certain work concerning the plumbing, sprinklers and fire suppression equipment.

SCP Global designed its wet bench with four internal sprinkler heads located over the bench area. The sprinkler heads connect to pipes running through the overhead hood of the equipment, and the pipes connect to the building's automatic fire suppression system. The wet bench components are installed in carefully defined stages, with testing performed at the conclusion of each stage before work is resumed. One stage involves performing a pressure test on the water lines of the building's fire extinguishing system after the sprinkler heads are installed within the wet bench and connected to the building's fire suppression water pipes. Prior to performing the water pressure test, a protective cover is placed over the wet bench equipment and the sprinkler heads are covered.

## II.     The Loss and Claim

On April 22, 1999, Meissner-Baran and/or one of its subcontractors performed a pressure test on the sprinkler system before the sprinkler heads were connected and without having taken the appropriate protective measures, including covering the wet bench. As a result, hundreds of gallons of water residing inside the automatic fire extinguishing system forcefully burst through the sprinkler openings and ran through the various parts of the wet bench, polluting it with dirty water, chemicals, and dirt.

During the post-loss assessment, Intel and SCP Global employees decided it was economically feasible to use only a portion of the original equipment provided. Therefore, Intel agreed to purchase replacement parts from SCP Global, at a total price of $1,823,881, including import, transport and installation, minus the value of salvaged parts.

On February 28, 2003, Intel filed a civil lawsuit in the District Court of Tel Aviv in Israel against Meissner-Baran, the subcontractors, Migdal Insurance Company Ltd. ("Migdal") (Meissner-Baran insurer), and The Israel Phoenix Assurance Company Ltd. ("Israel Phoenix") (the subcontractors' insurer), seeking reimbursement of the sum Intel paid to SCP Global for replacement of the water-damaged portions of the wet bench.  In that lawsuit, Intel alleges that Meissner-Baran is liable for having operated the fire extinguishing system without permission and/or approval, thereby permitting dirty water to flow into the system and the wet bench before SCP Global connected the sprinkler heads.  Intel further alleges that Meissner-Baran failed to provide supervision and instruction to subcontractors and was negligent in hiring its subcontractors.  Intel also alleges that the subcontractors failed to check whether the sprinkler heads were installed before performing the test, and employed unskilled workers who did not follow proper work procedures.

The subcontractors, in turn, along with Israel Phoenix filed a third-party claim for indemnification against SCP Global ("Third Party Claim") and a cross-complaint against Meissner-Baran and Migdal.  The subcontractors allege that SCP Global was responsible for installing the sprinkler heads in the wet bench.  They further contend that SCP Global instructed them not to do anything with the wet bench.  In the alternative, they allege that SCP Global failed to warn them that no sprinkler heads had been installed and/or failed to report that no pressure test was to be performed and failed to properly instruct them.

Atlantic Mutual accepted SCP Global's tender of defense of the Third Party Claim under a full reservation of rights, including the right to deny indemnity for any damages that may be precluded based upon certain policy exclusions.  In addition, Atlantic Mutual reserved its right to

4 - OPINION AND ORDER

file a declaratory relief action seeking a judicial resolution of its duty to defend and indemnify, and the right to seek reimbursement of sums paid in defense of this uninsured loss.

### III.     Relevant Policy Provisions

Atlantic Mutual issued Market Segment Commercial General Liability policy no. 486 30 45 17 to SCP Global, effective January 1, 1999, to June 1, 2000 ("Policy").  The Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  Atlantic Mutual also agreed to defend "any 'suit' seeking those damages."  The Policy defines "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Policy, Section V, ¶ 15.

On April 10, 2003, SCP Global notified Atlantic Mutual of the Third Party Claim and tendered its defense to Atlantic Mutual.  Atlantic Mutual initially refused coverage, contending that the subcontractors' claim was excluded under the Policy, specifically by Sections 2.j(6) and 2.k.

The first exclusion bars coverage for "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."  Policy, Section I, Coverage A, ¶ 2.j(6).  The Policy defines SCP Global's "work" as "work or operations performed by [SCP Global], or on [its] behalf" and "[m]aterials, parts, or equipment furnished in connection with such work or operation," including "[t]he

5 - OPINION AND ORDER

providing of or failure to provide warnings or instructions." Policy, Section V, ¶ 19. This is known as the faulty workmanship exclusion.

The second exclusion bars coverage for "property damage" to "your product" "arising out of it or any part of it." Policy, Section I, Coverage A, ¶ 2.k. The definition of "your product" is "[a]ny goods or products . . . manufactured, sold, handled, distributed or disposed of" by SCP Global, including "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'" and "[t]he providing of or failure to provide warnings or instructions." Policy, Section V, ¶ 17. This is known as the products exclusion.

On December 12, 2004, Atlantic Mutual notified SCP Global that it would honor its obligation to defend SCP Global in the Israeli litigation, but reserved its rights to deny indemnity and to seek declaratory judgment. On July 29, 2005, Atlantic Mutual filed this action seeking a declaration that it has no duty under the Policy to defend or indemnify SCP Global.

## ANALYSIS

Atlantic Mutual seeks summary judgment on its claims for declaratory relief that the exclusions in the Policy apply to bar coverage of the third-party claims presently pending against SCP Global. SCP Global contends that, at a minimum, issues of fact preclude summary judgment, and seeks a stay of this case until resolution of the Israeli litigation.

The parties agree that Oregon law governs the Policy.

///

///

///

**I.      Duty to Defend**

Oregon law imposes a duty to defend if the allegations in a complaint provide any basis for coverage:

> In evaluating whether an insurer has a duty to defend, the court looks only at the facts alleged in the complaint to determine whether they provide a basis for recovery that could be covered by the policy. . . .  The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage.  Even if the complaint alleges some conduct outside the coverage of the policy, the insurer may still have a duty to defend if certain allegations of the complaint, without amendment, could impose liability for conduct covered by the policy.  Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured.

*Ledford v. Gutoski*, 319 Or 397, 400, 877 P2d 80, 83 (1994) (citations omitted, emphasis in original).

As more recently summarized by *Marleau v. Truck Ins. Exchange*, 333 Or 82, 91, 37 P3d 148, 153 (2001), "[a]n insurer has a duty to defend if the factual allegations of the complaint, without amendment, state a claim for any offense covered by the policy."  However, an insurance company may have some basis to avoid a duty to defend if the pleadings tendered at the start of the case establish a clear basis for excluding coverage:

> In *Oregon Insurance Guarantee Assoc.*, . . . we held that the insurer had no duty to defend against a claim of trespass when the pleadings included a copy of a judgment holding the insured in contempt for violating an injunction prohibiting the insured from trespassing.  Here, there was nothing regarding Corum's conviction in the pleadings tendered to Farmers.

*American Cas. Co. v. Corum*, 139 Or App 58, 65 n10, 910 P2d 1151, 1155 n10, *adhered to on recon*, 141 Or App 92, 917 P2d 39 (1996).

7 - OPINION AND ORDER

In the underlying litigation in Israel, Intel alleges that a SCP Global representative explicitly instructed Meissner-Baran not to perform the pressure test of the fire extinguishing system because the wet bench had not yet reached the appropriate installation stage. Intel also alleges that Meissner-Baran and/or its subcontractors performed the pressure test before the sprinkler heads had been connected and without having first taken the necessary measures of care. If true, then the fault for damaging the wet bench rests with Meissner-Baran and/or its subcontractors and not with SCP Global.

However, the relevant pleading for determining the duty to defend is the Third Party Claim by the subcontractors against SCP Global. The Third Party Claim does not mention Intel's allegations, but instead alleges that SCP Global is the "manufacturer and/or planner and/or supplier" of the wet bench (Third Party Claim, ¶ 9), "supplied the [wet bench] to [Intel], had preparation for [*sic*] the installation of four sprinkler heads connected to the automatic fire extinguishing system," (*id*, ¶ 13), and was negligent in nine particulars (*id*, ¶ 20):

> 20.1  failed to install and/or failed to ensure that a sprinkler system had been installed in the Device prior to testing the air pressure in the Device;
> 20.2  approved and/or failed to prevent operation of the fire extinguishing system before all stages of the installation were completed;
> 20.3  totally failed and/or failed to properly supervise and/or plan and/or coordinate performance of the installation work of the Device;
> 20.4  approved and/or failed to prevent running water into the fire extinguishing system without first connecting the sprinkler heads, and without taking and/or ensuring that the proper protection measures were taken;
> 20.5  failed to notify and/or did not make sure to check whether sprinkler heads had been installed in the Device and/or that no air pressure tests should be performed in the Device;
> 20.6  employed workers who were not skilled in performing the work the subject of the Claim;
> 20.7  failed to ensure that proper work procedures were followed, in a manner that would prevent damage;
> 20.8  acted without concentration and/or attention and/or carelessly;

8 - OPINION AND ORDER

>20.9  failed to act as a reasonable and careful professional would have acted under the circumstances.

In sum, the specifications of negligence allege either that SCP Global:  (1) improperly performed its work of coordinating installation of the wet bench (*id*, ¶¶ 20.1 - 20.5 & 20.7); (2) employed unskilled workers (*id*, ¶ 20.6); and/or (3) acted carelessly or unreasonably under the circumstances (*id*, ¶¶ 20.8 - 20.9).  If true, then SCP Global negligently failed to coordinate installation of the wet bench and to insure that the sprinkler heads were installed prior to the pressure testing on the fire extinguishing system, even though the actual testing may have been performed by some other party.

SCP Global concedes that all of these allegations in the Third Party Claim, with the exception of ¶ 20.6, fall within the ambit of the faulty workmanship exclusion which excludes coverage for "'[p]roperty [d]amage' to . . . any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."  The definition of "[y]our work" sweeps broadly and includes "[w]ork or operations performed by [SPC Global] or on [SCP Global's] behalf," as well as the "providing of or failure to provide warnings or instructions."  Policy, Section V, ¶ 19.  Similarly, any allegation relating to a failure to provide warnings or instructions prior to testing falls under the products exclusion in the Policy.  Policy, Section V, ¶ 17.

With respect to the allegation in ¶ 20.6 concerning the employment of unskilled workers, SCP Global argues that this conduct, if proven, is outside the scope of either exclusion in the Policy.  SCP Global interprets this allegation as encompassing a negligent hiring claim which must be evaluated by the litigation in Israel.  However, the harm at which this allegation is

9 - OPINION AND ORDER

directed is the work that was allegedly performed (or not performed) by the allegedly unskilled workers hired by SCP Global.  The Policy expressly states that the faulty workmanship exclusion applies to "your work" which includes "[w]ork or operations performed by you *or on your behalf*."  Policy, Section V, ¶ 19(a) (emphasis added).  Any negligently hired employee would necessarily have been working "on [SCP Global's] behalf" in performing his or her work.  There is simply no negligent hiring claim that would not encompass the allegedly negligently hired person taking (or failing to take) the actions that are the alleged cause of the injury on behalf of the hiring entity.  *See, e.g.*, *Brown v. Pettinari*, 165 Or App 279, 288, 994 P2d 1231, 1236 (2000) ("The question whether defendant was negligent in hiring and failing to train Pettinari to operate a pilot car is relevant only if Pettinari was acting as a pilot car driver at the time of the accident.").  The allegation is necessarily directed at alleged deficiencies in work performance by persons working on SCP Global's behalf, which brings the allegation within the scope of the faulty workmanship exclusion.

Oregon cases emphasize the need for trial courts to wear blinders to factual information outside the pleadings when evaluating a duty to defend:

> An insurer's duty to defend under an insurance contract is broader than its obligation to pay.  The scope of the duty to defend is determined by comparing the terms of the insurance policy with the allegations of the complaint, to determine whether the allegations of the complaint show that there is a possibility that the policy provides coverage for the claims made.  Any facts not alleged in the complaint are irrelevant in determining the existence of the duty to defend.

10 - OPINION AND ORDER

*Gebrayel v. Transamerica Title Ins. Co.,* 132 Or App 271, 275, 888 P2d 83, 86, *review denied*, 321 Or 47, 892 P2d 1024 (1995) (citations omitted); *see also Weber v. Chicago Title Ins. Co. of Oregon*, 169 Or App 24, 29-30, 7 P3d 714, 716-17 (2000) (following *Gebrayel*).

Because none of the "factual allegations . . . without amendment" in the Third Party Claim states a claim for an offense outside the scope of the exclusions relied on by Atlantic Mutual, Atlantic Mutual has no duty to defend SCP Global.

## II.    Duty to Indemnify

Relying on *STK Enterprises, Inc. v. Crusader Ins. Co.*, 171 Or App 9, 15-16, 14 P3d 638, 642 (2000), SCP Global argues that the duty to indemnify is independent of the duty to defend and that facts may develop in the underlying litigation in Israel which will give rise to a duty to indemnify on the part of Atlantic Mutual. As a result, SCP Global seeks a stay of this action until resolution of the underlying litigation in Israel.

*STK Enterprises, Inc.*, and the cases on which it relies, are instructive because they anticipated a potential change in the pleadings or proof which would result in coverage of the claim. For instance in *STK Enterprises, Inc.*, three underlying claims of racial discrimination were settled by a restaurant and bar which had allegedly wrongfully refused entry to the plaintiffs. The restaurant then sought indemnification, in part based on the theory that the claims were covered under its insurance policy as "wrongful evictions." In upholding the trial court's ruling denying both a duty to defend and a duty to indemnify, the appellate court noted the independence of the two responsibilities and acknowledged the possibility that even where a duty to defend might not exist based on the pleadings, facts might later develop to give rise to a duty to indemnify. Nevertheless, the court found neither a duty to defend nor a duty to

indemnify due to a lack of any allegation or proof that the underlying plaintiffs had a possessory interest in the restaurant or bar. "The record before us does not disclose any possessory interest held by the underlying plaintiff. As in the underlying complaints themselves, there is nothing in the record upon which to base a conclusion that the plaintiffs were wrongfully evicted." *Id* at 16, 14 P3d at 642.

*STK Enterprises, Inc.* cites *Ledford*, 319 Or at 403, 877 P2d at 80, for the proposition that "facts at trial may show that the policy covers the insured's conduct and thus creates a duty to indemnify the insured for the damages it had to pay." In *Ledford*, the court affirmed a trial court's grant of summary judgment against an insurer for defense costs and indemnity based on the conclusion that an intended-acts exclusion barred coverage for the underlying claim of malicious prosecution. Distinguishing other cases, *Ledford* noted that the tort of malicious prosecution contained no "lesser included tort" that might be covered under the policy:

> Our conclusion that a subjective intent to harm is a necessary inference from [the insured's] conduct stems from the nature of the tort of malicious prosecution. The subjective intent of the defendant is an element of malicious prosecution. That is not the case with respect to some other intentional torts, such as battery, as to which this court has concluded that the inference of an intent to cause harm does not apply. Those other intentional torts have "lesser included torts," such as negligence, under which liability may be imposed for similar conduct without any subjective intent to cause harm.

*Ledford*, 319 Or at 405, 877 P2d at 85 (citations omitted).

The issue of the insured's liability in *Ledford* had no bearing on the duty to indemnify because the only conduct alleged was outside the scope of the policy:

> In order for the duty to indemnify to arise, the insured must be liable for harm or injury that is covered by the policy. The record

12 - OPINION AND ORDER

> in this case does not indicate whether [the insured] was in fact
> liable to [the underlying plaintiff] for malicious prosecution.
> Whether or not [the insured] was in fact liable, however, [the
> insurer] has no duty to indemnify. If [the insured] was actually
> liable for malicious prosecution, there is no duty to indemnify
> because acts committed with the subjective intent of causing harm
> or injury are excluded from coverage. On the other hand, if [the
> insured] was not in fact liable for malicious prosecution, there is
> no duty to indemnify because [the insured] was not legally
> obligated to pay money to [the underlying plaintiff]. Therefore,
> because under either circumstance [the insured] was not obligated
> to pay [the underlying plaintiff] for an injury covered by the
> policy, as a matter of law, [the insurer] had no duty to indemnify
> [its insured] for the settlement with [the underlying plaintiff].

*Id.*

The general notion that the duty to defend and the duty to indemnify are independent does not assist SCP Global. SCP Global has not identified, nor can this court discern, any instance in which the Policy will entitle SCP Global either to a defense or indemnification by Atlantic Mutual. The Third Party Claim alleges that the damage to the wet bench was brought about by the joining of the fire extinguishing and water systems and performance of a pressure test prior to installation of the sprinkler heads. Whatever portion of those activities was not SCP Global's responsibility cannot support a judgment of liability against SCP Global. Absent a judgment against SCP Global, no duty to indemnify arises.[1] On the other hand, whatever portion of those activities was the responsibility of SCP Global will not be covered by the Policy under either the faulty workmanship or products exclusion. In short, no additional factual information will provide coverage for the Third Party Claim in this case. The factual determination in Israel concerning SCP Global's responsibilities will either exonerate SCP Global from liability entirely

---

[1] Of course, SCP Global will have incurred attorney fees in order to successfully defend the Third Party Claim which it cannot recover from Atlantic Mutual. Whether or not those fees can be recovered from one of the other parties to the underlying litigation is unknown.

13 - OPINION AND ORDER

(if SCP Global was not responsible for performing the act which would have prevented the mishap) or trigger one of the exclusions (if SCP Global was responsible in part for the loss). In either case, no duty to indemnify arises.

**ORDER**

In sum, Atlantic Mutual is not obligated to defend SCP Global in the litigation pending in Israel because no allegations in the Third-Party Claim against SCP Global arguably fall outside the scope of the Policy's exclusions. Similarly, Atlantic Mutual is not obligated to indemnify SCP Global because no duty to indemnify will arise, either because SCP Global will be exonerated or because any conduct giving rise to liability by SCP Global will be excluded from coverage under the Policy.

For the reasons stated above, Atlantic Mutual's Motion for Summary Judgment (docket #14) is GRANTED and SCP Global's Motion for a Stay (docket #15) is DENIED.

DATED this 25th day of April, 2006.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge